UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BRADFORD ANTHONY GIFFORD, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> HAMILTON COUNTY, HAMILTON ) <br> COUNTY SHERIFF JIM HAMMOND, ) <br> and JOHN DOES 1-15, ) <br> ) <br> *Defendants*. ) | Case No. 1:22-cv-245 <br><br> Judge Curtis L. Collier |

## MEMORANDUM OPINION

Defendants Hamilton County and Hamilton County Sheriff Jim Hammond (collectively "Defendants") have filed separate motions for summary judgment in this civil rights action in which Plaintiff, a former prisoner, asserts violations of his rights under the United States Constitution and Tennessee law. (*See* Docs. 35, 37.) Plaintiff, who is represented by counsel, has filed a response opposing the motions. (Doc. 43.) After consideration of the parties' pleadings, the competent summary judgment evidence, and the applicable law, Defendants' motions for summary judgment (Doc. 35, 37) will be **GRANTED** as to Plaintiff's federal claims, the Court will **DECLINE** to exercise supplemental jurisdiction over Plaintiff's state-law claims, and this action will be **DISMISSED**.

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)). That is, to successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "(t)he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (Plaintiff in this case), must come forward with proof to support each element of his claim. Plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan*, 497 U.S. at 888, or by a mere "scintilla" of

evidence, *Anderson*, 477 U.S. at 252. It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888.

In considering a motion for summary judgment, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . [the ultimate decision becomes]. . . a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007).

## II. THE PARTIES' EVIDENCE

### A. Undisputed Facts

Plaintiff was arrested on October 2, 2021, and booked into the Hamilton County Jail around 10:00 p.m. on charges of public intoxication and criminal trespass. (Doc. 39 A.¶ 1; Doc. 43-1 A.¶ 1.) A "Booking Pre-Classification Checklist" was prepared as to Plaintiff. (Doc. 39 B.¶ 5; Doc. 43-1 B.¶ 5.) On that Checklist, Plaintiff's "Pre-Classification Recommended Security Level" was checked "Maximum" in accordance with the Hamilton County Jail's "Initial Intake Screening" policy, which requires a maximum-security placement for detainees in holding areas for security reasons. (Doc. 39 B.¶¶ 6, 7, 21; Doc. 43-1 B.¶¶ 6, 7, 21.) All corrections deputies are trained Hamilton County Sheriff's Office ("HCSO") Policy 90.05.09(J)(1), which states: "During intake and booking, the Booking officers determine the initial cell assignment and initially classify all inmates as maximum security." (Doc. 39 B.¶¶ 22, 23; Doc. 43-1 B.¶¶ 22, 23; Doc. 39-2 p. 28.) Detainees are not segregated from other detainees during the intake process based only on the charges alleged against them; detainees are segregated only if they fail to "behave[] appropriately during the initial intake process." (Doc. 39 B.¶¶ 2; Doc. 43-1 B.¶ 2.)

Plaintiff was initially housed with approximately twelve other detainees in Foxtrot 2, a temporary holding cell for detainees going through the intake and booking process. (Doc. 39

3

A.¶ 2, B.¶ 1; Doc. 43-1 A.¶ 2, B.¶ 1). At around 2:30 a.m. on October 3, 2021, Cyrion Brown was placed in the same cell. (Doc. 39 A.¶ 3; Doc. 43-1 A.¶ 3.) Mr. Brown had been arrested earlier that morning by the Red Bank Police Department and brought to the Hamilton County Jail for booking. (Doc. 39 B.¶ 8; Doc. 43-1 B.¶ 8.) Before this date, Mr. Brown had never been detained in the Hamilton County Jail. (Doc. 39 B.¶ 9; Doc. 43-1 B.¶ 9.) Soon after Mr. Brown was placed in Foxtrot 2, Brown got into an altercation with another detainee, and Plaintiff told them, "[K]nock it off, it's 3 a.m." (Doc. 39 A.¶ 4; Doc. 43-1 A.¶ 4.) "That was all it took for Cyrion Brown to attack" Plaintiff. (Doc. 39 A.¶ 5; Doc. 43-1 A.¶ 5.) After the event, Plaintiff told Deputy Fuller that "the assaul[t] on him was completely unprompted." (Doc. 39 B.¶ 15; Doc. 43-1 B.¶ 15.) Plaintiff was injured during the attack and taken for medical treatment. (Doc. 39 A.¶ 6; Doc. 43-1 A.¶ 6.) Plaintiff was released on bond later October 3, 2021. (Doc. 39 B.¶ 16; Doc. 43-1 B.¶ 16.)

The Hamilton County Sheriff's Office brought assault charges on Mr. Brown because of the incident involving Plaintiff, and an indictment was returned against Mr. Brown. (Doc. 39 B.¶¶ 17, 18; Doc. 43-1 B.¶¶ 17, 18; *see also* Docs. 39-11, 39-12.) That charge was still pending at the time Defendants moved for summary judgment in this action. (Doc. 39 B.¶ 19; Doc. 43-1 ¶ 19; *see also* Docs. 39-11, 39-12.)

### B. Plaintiff's Proof[1]

When Plaintiff was arrested for public intoxication on October 2, 2021, and placed in a "maximum security" "drunk tank" with about a dozen other prisoners, he had no prior criminal

---

[1] Plaintiff's declaration (Doc. 43-2) signed under the penalty of perjury is the only proof he has presented in this action. Therefore, Plaintiff's declaration is the only evidence from Plaintiff the Court may consider for purposes of summary judgment. *See, e.g., M.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 445 (6th Cir. 2021) ("[O]nce a party moves for summary judgment and identifies record materials showing no genuine dispute of material fact, the nonmoving party "must

4

history. (Doc. 43-2 ¶¶ 1, 2.) Later, Mr. Brown, "a stocky 19-year-old with a history of violence arrested on an assault charge and appearing to be high on cocaine" was placed in the same cell. (*Id.* ¶ 2.) During Mr. Brown's subsequent assault on Plaintiff, he "split [Plaintiff's] chin wide open, caused a severe conclusion, two black eyes, hurt [Plaintiff's] back, and tore [Plaintiff's] lip away from his jaw." (*Id.* ¶ 2.)

Plaintiff was taken to the emergency room for x-rays and stitches. (*Id.* ¶ 3.) When Plaintiff returned from the hospital, "the jail demanded to put [him] right back into the same cell with Brown, saying their policy is to put everyone in the same holding cell, with no segregation from violent, intoxicated, or dangerous inmates," even though Mr. Brown had just assaulted Plaintiff that night." (*Id.* ¶ 4.)

As a result of the assault, Plaintiff has an asymmetrical smile from permanent nerve damage to his face and "intense knee pain and a herniated disc in [his] lower back" that limits his ability to engage in his passions—golf and tennis. (*Id.* ¶ 3.)

All the charges against Plaintiff were found to lack probable cause and were dismissed. (*Id.* ¶ 5.)

### C. Defendants' Proof

For security purposes, all detainees are classified as maximum security for placement in holding areas during the intake process at the Hamilton County Jail, because classification is a process that requires retrieving information from a variety of sources. (Doc. 39-1 ¶¶ 11, 16.) The process of classification takes into account numerous factors, including the detainee's "age, gender, special needs or problems, current charge(s), behavior, incompatible inmates, detainer(s),

---

make an affirmative showing with proper evidence in order to defeat the motion." (quoting *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009))).

whether the inmate is charged with a violent or non-violent offense;" prior arrests; known criminal history; gang affiliations; history of institutional violence; history of prior behavior in the facility; "specific information provided by the detainee, or other information that would indicate a specific threat;" and a search of the databases for the National Crime Information Center ("NCIC") and Tennessee Offender Management Information System ("TOMIS") to obtain any relevant information. (Doc. 39-1 ¶¶ 12–14, 39; Doc. 39-2 at 29–31; Doc. 39-6 ¶ 27.) A detainee's placement in the holding area during this period not only allows officers time to determine the detainee's appropriate classification, but also permits detainees the opportunity to attempt to make bond by contacting bondsmen, family, or friends, as there is no charge for phone calls in the holding area. (Doc. 39-1 ¶ 17.)

When Plaintiff was booked into the Hamilton County Jail and pre-classified for maximum security in accordance with the HCSO's policy, he was placed in Foxtrot 2 with no incompatibles identified. (Doc. 39-1 ¶¶ 18–23; *see also* Docs. 39-3; 39-4.) Cyrion Brown, then aged 19, was arrested for simple assault on October 3, 2021, and placed into Foxtrot 2 with no incompatibles identified. (Doc. 39-1 ¶¶ 26–29; Doc. 39-5 at 2.) There is no record indicating that Mr. Brown's behavior during the booking process would have required him to be placed in segregation or otherwise separated from the other pretrial detainees. (Doc. 39-1 ¶¶ 30, 32.) There is also no record indicating that anyone, including Plaintiff, informed jail personnel that they had been threatened by, or anticipated an assault by, Mr. Brown. (*Id.* ¶¶ 33, 34.)

HCSO deputies receive training regarding booking and intake procedures, along with the training "that is required by The Tennessee Corrections Institute, the American Correctional Association, the Prison Rape Elimination Act, Peace Officer Standards and Training, and the

6

National Commission on Correctional Health Care." (Doc. 39-1 ¶¶ 36, 37; *see also* Docs. 39-6 ¶ 28; 39-7; 39-8; 39-9; and 39-10.)

III. ANALYSIS

Plaintiff asserts the following claims against Defendants:

1. A violation of his Fourteenth Amendment due process right be protected from violence committed by other inmates;

2. A claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) for failure to train, supervise, discipline; for condoning or ratifying unconstitutional policies; and failure to establish and maintain policies to mitigate risks to inmates; and

3. Various claims under Tennessee law.

(Doc. 28 at 12–19)[2]. To support his *Monell* claim, Plaintiff alleges facts regarding other incidents at the Hamilton County Jail. (*Id.* at 4–10), which he maintains establish that it "is notorious for its failure to provide adequate medical care to inmates, inhumane living conditions, and failure to protect inmates from violence." (*Id.* ¶ 11.) Many of the incidents are dissimilar to those in Plaintiff's amended complaint, such as allegations of excessive force by officers, drug overdoses, escapes, illegal detention, malnutrition, and inadequate medical treatment (*See id.* at 4–10.) But seven of the incidents set forth by Plaintiff involve inmate-on-inmate violence at the Hamilton County Jail. (*See id.* ¶¶ 14, 15, 16, 21, 22, 25, 31.) However, Plaintiff has not presented any competent proof about any of these incidents.

---

[2] Plaintiff's amended complaint is not sworn (Doc. 28 at 20), and accordingly, the Court does not consider it evidence for summary judgment purposes. *Cf. El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (providing a sworn complaint "carries the same weight" as an affidavit for purposes of summary judgment).

7

### 1. Failure to Protect

Plaintiff asserts a Fourteenth Amendment due process claim against Defendant Sheriff Jim Hammond in his individual capacity for his failure to protect Plaintiff against assault by Mr. Brown. (Doc. 28 ¶¶ 10, 50–56.)

Prison officials have a duty to protect inmates from violence by other inmates and must take reasonable measures to protect their safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). Because Plaintiff was a pretrial detainee during the relevant time, liability attaches to a prison official's failure to protect him only where he was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, to which the prison official "acted (or failed to act) deliberately and recklessly." *Westmoreland v. Butler Cnty., Ky.*, 29 F.4th 721, 728 (6th Cir. 2022) (citing *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 596 (6th Cir. 2021)). Specifically, liability attaches where the official "(1) act[ed] intentionally in a manner that (2) put[] the plaintiff at a substantial risk of harm, (3) without taking reasonable steps to abate that risk, and (4) by failing to do so actually cause[d] the plaintiff's injuries." *Stein v. Gunkel*, 43 F.4th 633, 639 (6th Cir. 2022) (citing *Westmoreland*, 29 F.4th at 729).

But any individual liability against Sheriff Hammond must be based on his "own unconstitutional behavior." *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Plaintiff has not alleged that Sheriff Hammond was even aware of Plaintiff's placement in the Hamilton County Jail during the incidents giving rise to this lawsuit, much less that he was aware of a risk to Plaintiff that he ignored. And plaintiff must show that Sheriff Hammond "at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate" to hold Sheriff Hammond liable in a supervisory role for a subordinate's acts under 42 U.S.C. § 1983. *Troutman v. Louisville Metro. Dep't of Corrs.*, 979 F.3d 472, 487–

88 (6th Cir. 2020). That is, he must have done "more than play a passive role in the alleged violation . . . [as] [s]upervisory liability under § 1983 cannot attach where the allegation of liability is based on a mere failure to act." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999.) Here, Plaintiff does not advance any facts of "active unconstitutional behavior" by Sheriff Hammond that would state an actionable claim. *See Sheehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).[3]

Additionally, Plaintiff fails to set forth any proof that anyone, including Sheriff Hammond, violated his constitutional rights by failing to protect him from the attack by Mr. Brown, as Plaintiff has not presented any proof that any HCSO official failed to take reasonable steps to abate a serious risk of harm to Plaintiff. Plaintiff places emphasis on the fact that Mr. Brown was arrested and booked into the Hamilton County Jail on an assault charge. But this fact alone is insufficient to show Mr. Brown posed a substantial risk to any other detainee in Foxtrot 2. *See Davis v. Chorak*, *e.g.*, No. 22-1839, 2023 WL 2487339, at *3 (6th Cir. Mar. 14, 2023) (finding that merely alleging that another inmate had a violent history is not enough to show substantial risk of harm).

The competent proof before the Court is that Mr. Brown had never been in the Hamilton County Jail before October 3, 2021; both Mr. Brown and Plaintiff were placed in a temporary holding cell pending the classification process in accordance with HCSO policy; both Plaintiff and Mr. Brown were arrested for misdemeanor offenses; Mr. Brown had no record of incompatible inmates; and that the attack on Plaintiff was unprompted and occurred moments after Mr. Brown's verbal altercation with another inmate. There is no proof in the record that Mr. Brown displayed

---

[3] The Court notes that Sheriff Hammond cannot be found individually liable merely for creating or maintaining the pre-classification booking policy challenged by Plaintiff. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (holding a failure to supervise and train claim based on a supervisory official's "adherence to or continuation of a policy . . . improperly conflate[d] a § 1983 claim of individual supervisory liability with one of municipal liability") (citation omitted).

9

any aggressive behavior at all until moments before Plaintiff was attacked.[4] Therefore, Plaintiff has not demonstrated that Sheriff Hammond (or any other Hamilton County Jail officer) was aware of facts from which it could be inferred that Plaintiff faced a substantial risk of harm by being placed in Foxtrot 2 with Mr. Brown, or that any such risk was recklessly disregarded. Accordingly, Plaintiff has not set forth any proof from which a jury could reasonably find that Sheriff Hammond violated Plaintiff's constitutional rights, and he is entitled to summary judgment.

### 2. *Monell*

Plaintiff also sues Defendants Hamilton County and Sheriff Hammond in his official capacity under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) based on allegations that they "established, condoned, ratified, and encouraged" policies that created "conditions of confinement that failed to mitigate serious risks of harm and violations of constitutional rights" and failed to properly train, supervise, and/or discipline Hamilton County Jail officers regarding the protection and segregation of inmates. (*See* Doc. 28 at 13–16.)

Plaintiff's claim against Sheriff Hammond in his official capacity is the equivalent to suit against Hamilton County itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell,* 436 U.S. at 690 n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). And for a municipality to be liable under *Monell*, the plaintiff must establish that a custom or policy of that entity caused a

---

[4] The only proof in the record concerning Mr. Brown's demeanor or behavior prior to his attack on Plaintiff is Plaintiff's own statement that Mr. Brown "appear[ed] to be high on cocaine" and exhibited "geeked up behavior." (Doc. 43-2 ¶ 2.) But this conclusory opinion, based solely on Plaintiff's own subjective beliefs, does not create a question of fact. *See Mayberry v. Endocrinology-Diabetes Assocs.*, 926 F. Supp. 1315, 1322 (M.D. Tenn. 1996) (citing *Robinson v. Union Carbide Corp.*, 805 F.Supp.2d 514, 523 (E.D. Tenn. 1991)).

10

violation of his constitutional rights.  *Monell*, 436 U.S. at 694 (holding that a governmental entity may be liable under § 1983 only where its official custom or policy causes a constitutional rights violation).  This policy or custom must be the "moving force" behind the alleged constitutional deprivation.  *Id.*

>There are four theories under which a municipality may be held liable:
>
>(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted).  Plaintiff maintains that Defendants bear liability under each of these four theories.  (*See* Doc. 43 at 6–7.)

To establish a *Monell* claim based on an illegal policy, Plaintiff must identify a policy or custom, connect it to Hamilton County, and show that his particular injury was "incurred due to the execution of that policy."  *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 402 (6th Cir. 2010).  Here, Plaintiff argues that Hamilton County has a policy of failing to segregate inmates based on risk.  But it is undisputed that, "if a detainee behaves appropriately during the initial intake process, the detainee is not segregated from other detainees."  (*See* Doc. 43-1 B.¶ 2.)  And there is no proof in the record that Mr. Brown's conduct at the time of booking would have alerted anyone that he should be segregated from Plaintiff or any other detainee.  Accordingly, the Court finds Plaintiff fails to demonstrate that there is a genuine dispute of material fact that Plaintiff was assaulted due to a policy of Hamilton County.

Second, to establish a ratification theory of liability, Plaintiff "may prove that the municipality has a pattern of inadequately investigating similar claims."  *Stewart v. City of Memphis, Tenn.*, 788 F. App'x 341, 344 (6th Cir. 2019) (citation omitted).  To do this, Plaintiff must identify "multiple earlier inadequate investigations and they must concern comparable claims."  *Id.* at 344–45.  But, as explained above, Plaintiff has not presented any evidence that the

11

County failed to investigate multiple, comparable incidents of inmate-on-inmate assault in its temporary holding areas. Therefore, Plaintiff fails to demonstrate that there is a genuine issue of material fact regarding the applicability of this theory.

Third, as to Plaintiff's claim that Defendants failed to train, supervise, or discipline, the Court notes that failure to provide adequate training can constitute a policy or custom if the deficiency evidences a "'deliberate indifference' as to its known or obvious consequences." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997) (citation omitted). To establish such a claim, Plaintiff must prove either (1) a "pattern of similar constitutional violations by untrained employees" or (2) "a single violation of federal rights, accompanied by a showing that (the municipality) has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738–39 (6th Cir. 2015) (citations and internal quotation marks omitted). Here, Defendants have presented proof that Hamilton County requires its officers receive initial training and annual training in accordance with relevant law enforcement requirements, and that HCSO policy was followed when both Plaintiff and Mr. Brown were initially placed in Foxtrot 2. Plaintiff has not presented any evidence from which the Court could find that the training received by any officer in this case was in any way inadequate. Therefore, Plaintiff has failed to demonstrate that there is a genuine dispute of material fact that the training, supervision, or discipline of the HCSO staff caused the assault on Plaintiff.

Finally, in order to prove that the County's "custom of tolerance or acquiescence of federal rights violations" caused his constitutional violation, Plaintiff must demonstrate that the incident in which he was assaulted is representative of "(1) a clear and persistent pattern of illegal activity, (2) which the [County] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [County's] custom was the cause of the (constitutional violation)." *Thomas*

*v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996)). And in his amended complaint, Plaintiff cites other cases and news articles in alleging his *Monell* claim. But the amended complaint is not evidence. Further, Plaintiff has not presented any facts to suggest that the incidents alleged in other lawsuits or referred to in news articles are sufficiently comparable to the facts of this case. In fact, Plaintiff has not presented any evidence of previous inmate-on-inmate assaults in a holding cell that resulted from a constitutional violation at the Hamilton County Jail. Accordingly, Plaintiff fails to demonstrate that there is a genuine issue of material fact that there was a custom of tolerance to federal constitutional violations that caused the assault on Plaintiff.

Where no violation of a plaintiff's constitutional rights occurred, a municipality cannot be liable under *Monell*. *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) ("There can be no liability under *Monell* without an underlying constitutional violation." (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014))). And, as addressed above, Plaintiff has not set forth any evidence from which a reasonable jury could find the unprompted attack by Mr. Brown resulted from a constitutional violation. Therefore, his *Monell* claim also fails, and Defendants are entitled to summary judgment as to this claim.

### 3. State-Law Claims

Because the Court grants summary judgment to Defendants as to Plaintiff's federal claims, the Court will exercise its discretion to decline to exercise supplemental jurisdiction over any remaining state-law claims by dismissing these claims without prejudice. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726–27 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

## IV. CONCLUSION

For the reasons set forth above:

1. Defendants' motions for summary judgment (Doc. 35, 37) will be **GRANTED** as to Plaintiff's federal claims;

2. The Court will **DECLINE** to exercise supplemental jurisdiction over Plaintiff's State-law claims; and

3. This action will be **DISMISSED**.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**